## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Joseph J. Berry,
an individual

        Plaintiff,

v.

Ford Motor Company.
a Michigan Corporation,

        Defendant,

_____/

Case No. 11-10569
Hon.  John Corbett O'Meara

**JURY DEMAND**

Douglas W. Sprinkle (P25326)
Thomas E. Anderson  (P P32564)
Gifford, Krass, Sprinkle,
  Anderson, & Citkowski, P.C.
2701 Troy Center Drive, Suite 330
P.O. Box 7021
Troy, MI  48007
(248) 647-6000
(248) 647-5210 (Fax)
*Attorneys for Plaintiff*

_____/

## AMENDED COMPLAINT AND JURY DEMAND

This Amended Complaint is made pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). This Amendment is made only for the purpose of attaching Exhibit E. Plaintiff, Joseph J. Berry, a Michigan resident, by and through his attorneys, alleges as follows:

### Parties and Jurisdiction

1.     Plaintiff, Joseph J. Berry, (hereinafter "Plaintiff") is an individual residing in Michigan.

2.     Defendant, Ford Motor Company (hereinafter 'Defendant') is a corporation organized under the laws of the Michigan, with its principal place of business located in Dearborn, Michigan.

3.     The amount in controversy in this matter exceeds the sum of twenty-five thousand dollars ($25,000), exclusive of costs and interest.

4.     This Court has jurisdiction over this matter pursuant to MCL §§ 600.605 and 600.711.

5.     Venue is proper in this county pursuant to MCL § 600.1621.

### Background

6.     Plaintiff is a listed inventor of U.S. Patent Application Serial Nos. 11/769,346, 12/406,595, 12/361,797, 12/406,281, 12/361,757 and 12/399,513. Several other U.S. Patent Applications have been filed for which Plaintiff should be a named inventor (patent applications wherein Plaintiff is listed and patent applications wherein Plaintiff is not listed as an inventor collectively hereinafter referred to as the 'Patent Applications'). Of the above mentioned Patent Applications, the only published U.S. Patent Application is 11/769,346 (attached hereto as 'Exhibit A'). The subject matter of the above listed applications relates directly to Defendant's prized selling feature incorporating safety and communication features by linking a mobile device to a motor vehicle (hereinafter the 'Sync Technology'). Defendant has implemented the Sync Technology inventions belonging to Plaintiff in all new models containing the Sync Technology systems. The Sync Technology implemented in Defendant's vehicles is a highly marketed and desirable selling feature of Defendant's vehicles.

7.     Plaintiff has engaged in the business of developing emergency notification and response systems used in connection with motor vehicles since 1994. Plaintiff has spent many

years working for Ameritech, Wingcast and Tele Atlas (all companies involved with motor vehicle notification systems) whereby he subsequently developed the background knowledge and expertise to develop innovative emergency notification and information response systems. Specifically, Plaintiff is intimately familiar with the laws and methodology of 911 emergency response systems and usability in connection with motor vehicles.

8.     Based on Plaintiff's extensive expertise, Doug Vandagens, an agent of Defendant, approached Plaintiff to discuss the development of the Sync Technology. Throughout the course of several meetings, Plaintiff suggested several novel approaches to an emergency response and notification and the Sync Technology. More specifically, Plaintiff suggested improvements and novel approaches to the 911 Assist (SYNC V2), Command and Control of Mobile Applications (SYNC V4), Vehicle Health Reports (SYNC V2) and the Traffic, Directions, and Information (SYNC V3) (hereinafter referred to as 'inventions'). Plaintiff's inventions are contained within the Patent Applications.

9.     The broad concepts of the above inventions were conceived of and reduced to practice before January 1, 2007. Plaintiff has not been compensated for the above listed inventions contained within the Patent Applications.

10.     Prior to April 1, 2007, no written agreement existed between Defendant and Plaintiff regarding inventions owned or developed by Plaintiff. Consequently, any intellectual property developed or possessed by Plaintiff prior to April 1, 2007 belongs solely to him.

11.     Prior to April 1, 2007, Plaintiff was not employed by any person, company or · other entity associated with Defendant.

12.     Defendant approached Plaintiff requesting work as an independent contractor to market and implement the above mentioned inventions. Plaintiff agreed to work with Defendant

3

as an independent contractor under the belief he would be compensated for the above inventions. Plaintiff has never been compensated in any way for his inventions.

13. Plaintiff created JBJ Advisors as an entity to hold and control his intellectual property and inventions. Plaintiff continued pursuant to the understanding that all intellectual property and inventions created while as an independent contractor with Defendant will be owned by Plaintiff and JBJ Advisors.

14. Services performed by Plaintiff from May 1, 2007 until April 30, 2008 for Defendant were performed pursuant to a statement of work entitled "Sync Services Version 1.5 and 2.0 Service Delivery Network" (hereinafter 'SOW 1') (Exhibit B). This work was performed on a monthly basis from May 1, 2007 to April 1, 2008. Under this agreement, Defendant agreed to pay Plaintiff $27,000 per month. SOW 1 was created by Plaintiff on April 3, 2007. SOW 1 contains no intellectual property provision. Plaintiff submitted SOW 1 and from May 1. 2007 until April 30, 2008, Plaintiff was working pursuant to SOW 1.

15. Exhibit C shows a *modified* version of a statement of work entitled "Sync Services Version 1.5 and 2.0 Service Delivery Network" (hereinafter 'SOW 2') (Exhibit C). Sometime between April 3, 2007 and April 10, 2007, SOW 1 was modified to become SOW 2 by Francis Luk (a Ford employee) to include a provision providing that property developed based upon the statement of work shall be owned by Defendant. (Exhibit C, Page 9, Paragraph 7). Plaintiff never saw SOW 2 and was not aware of the existence of SOW 2 until it came time for contract renewal in March 2008. A meeting of the minds was never established between Plaintiff and Defendant.

16. Services performed by Plaintiff from May 1, 2008 to January 2009 were performed pursuant to the statement of work entitled "Sync Services Version 2 and 3 Service

Delivery Network" (hereinafter 'SOW 3') (Exhibit D). In March 2008, Plaintiff and Robert Johnson, a Defendant representative, requested a copy of SOW 1 to modify with current information. Instead, Plaintiff was given SOW 2, again a document which he had never seen. SOW 2 was modified by Plaintiff to become SOW 3 on March 10, 2008 by amending Paragraph 7 to provide for co-ownership of intellectual property, among other details. SOW 3 was dated and sent back to Robert Johnson to review and approve.

17.     Paragraph 7 of SOW 3 of work clearly provides that intellectual property developed based upon the statement of work and relating to the Sync, Sync SDN, and Sync services will be co-owned between Defendant and Plaintiff (Exhibit C, Paragraph 7).

18.     Under the terms of SOW 3, Defendant agreed to pay Plaintiff $33,500 per month. The compensation Plaintiff received from Defendant was for the implementation and commercialization of Plaintiff's already existing inventions. Plaintiff was compensated for the time and effort he spent in producing a market ready product. The amount he was paid was commensurate with the work he performed and clearly did not compensate Plaintiff for his inventions.

19.     Plaintiff created numerous inventions before any agreement was in place between Plaintiff and Defendant (i.e. prior to April 1, 2007). Furthermore, Plaintiff created additional inventions pursuant to SOW 1 and SOW 2. U.S. Patent Applications have been filed for many of these inventions wherein Defendant is listed as an Assignee. Plaintiff is listed as a co-inventor on some of these applications; however, Defendant has fraudulently neglected to list Plaintiff as an inventor on numerous U.S. Patent Applications filed by Defendant.

20.     Plaintiff is a co-owner, along with Defendant, of all works created pursuant to both SOW 1 and SOW 3.

21.     In March of 2007, a conference call was attended by Plaintiff, Mark Scalf (Defendant employee), Doug VanDagens (Defendant employee), Francis Luk (Defendant employee) Jennifer Stec (Defendant legal counsel) … etc. Ms. Stec requested that the concepts and inventions being created needed to be documented in Ford's Anaqua (Ford's idea disclosure system). When Plaintiff questioned this practice, Jennifer Stec informed Plaintiff that inputting the information and cooperating with the patent application process protects the inventions, Defendant, and Plaintiff.   Approximately one year later, Jennifer Stec along with John LeRoy of Brooks Kushman P.C. (Ford's outside patent counsel) reassured Plaintiff that the purpose of filling patents on his inventions and cooperating with the patent application process was the best way to protect the inventions, Defendant, and Plaintiff.

22.     Furthermore, Plaintiff explained to Jennifer Stec that he wasn't an employee of Ford. Jennifer Stec reassured Plaintiff that proceeding with the application process will protect Plaintiff as well.

23.     Plaintiff was asked to sign several documents relating to his inventions by Defendant's Employees. Based on the representation by Jennifer Stec, Plaintiff signed the documents assuming they were just part of the patent application process connected with Defendant's disclosure system. (Exhibit E) Upon recognition that he was signing assignment documents for the numerous inventions he solely created and the assignments were in contradiction to his agreement with the Defendant Plaintiff ceased signing any further assignment documents. Since the terms of that assignment are in contravention to his agreement with Defendant and without consideration, the enforceability of these assignments is questionable (Exhibit E).

6

24.     Employees of Defendant misled Plaintiff into signing the assignments without properly explaining the ramifications of signing said documents. Plaintiff was misled into signing assignment documents for U.S. Patent Application Serial Nos. 11/769,346, 12/406,595, 12/361,797, 12/406,281, 12/361,757 and 12/399,513.

25.     Furthermore, consideration was entirely absent in exchange for the assignments that Plaintiff signed. Absent consideration, a contract is simply not formed. Plaintiff was not even compensated the $200 payment customarily given to Defendant employees in exchange for the assignment.

26.     Resolution of this matter was attempted between Plaintiff and Defendant from October 2009-November 2010. No resolution was reached between the parties.

### General Allegations

27.     Plaintiff is the sole inventor of at least U.S. Patent Application No. 11/769,346.

28.     Plaintiff invented, both solely and jointly dependant upon each varying application, the matter contained within the Patent Applications.

29.     Plaintiff was not compensated for the inventions contained within the Patent Applications. The compensation Plaintiff received from Defendant was for the implementation and commercialization of Plaintiff's already existing inventions. Plaintiff was compensated for the time and effort he spent in producing a market ready product. The amount he was paid was commensurate with the work he performed and did not compensate Plaintiff for his inventions.

30.     Lack of consideration in connection with the signed assignments provides that the signed assignment documents are invalid and unenforceable.

7

31. Plaintiff was fraudulently induced into executing assignments of the Patent Applications.

## COUNT I – UNJUST ENRICHENT

32. Plaintiff reasserts and realleges the allegations of paragraphs 1-31 above as if fully set forth herein.

33. As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiff. Specifically, Defendant's unfair and illegal actions as described above have enabled Defendant to develop and manufacture the Sync Technology without compensating Plaintiff thereby unjustly enriching Defendant at an amount to be proven at trial.

34. Defendant's conduct was malicious, fraudulent, oppressive and/or recklessly committed, with wanton disregard of Plaintiff's rights.

## COUNT II – FRAUD IN THE INDUCEMENT

35. Plaintiff reasserts and realleges the allegations of paragraphs 1-34 above as if fully set forth herein.

36. Plaintiff's willingness to sign patent assignment documents corresponding to the Patent Applications was caused by the fraudulent misrepresentations of the Defendant and its agents.

37. The time of the representations was on or around March 2007 and a second time on or around March 2008. The place of the misrepresentations is Defendant's company property

8

during a conference call between Plaintiff, Mark Scalf (Defendant employee), Doug VanDagens (Defendant employee), Jennifer Stec (Defendant legal employee), Francis Luk (Defendant employee) ... etc. The content of the representations include verbal assurances made by Jennifer Stec (an employee attorney of Defendant's legal department).

38.   In March 2007 (and again in March 2008), Jennifer Stec made a misrepresentation to Plaintiff that by allowing the inputting of the information and cooperating with the patent application process, presumably including all paperwork and documentation, protects both Defendant and Plaintiff.

39.   Based on this misrepresentation, assignments were signed on June 12, 2007, November 21, 2008, January 1, 2009, February 9, 2009 (two assignments) and March 3, 2009.

40.   The misrepresentations made by Defendant were false. Since the assignment documents clearly only protect Defendant, the representations made by Jennifer Stec assuring Plaintiff that allowing the inputting of the invention information and the associated patent application process will protect Plaintiff are false and clear misrepresentations.

41.   Defendant knew the representations made were false. Since Jennifer Stec is an attorney working with intellectual property issues for Defendant, it is clear that Defendant knew, or should have known, the representations to be false.

42.   Defendant knew that the material representation was false at the time it was made, or was reckless in making the same and made it as a positive assertion. Since Jennifer Stec is an attorney working with intellectual property issues for Defendant, and was an attorney working for Defendant at the time the misrepresentations were made, it is clear that Defendant knew, or should have known, the representations to be false.

9

43.     Defendant intended Plaintiff to act upon the misrepresentation. Again, SOW 1 and SOW 3 provide that intellectual property developed under SOW 1 and SOW 3 is either solely owned by Plaintiff, or co-owned by Plaintiff and Defendant, respectively. Defendant wanted sole ownership of the Patent Applications developed by Plaintiff since said intellectual property was not covered in any previous agreement. To gain sole ownership, misrepresentations were made with the intention that Plaintiff would act on the misrepresentations.

44.     Plaintiff reasonably acted on the misrepresentation made by Defendant. Based on the representation by Jennifer Stec, Plaintiff signed the documents assuming they were just part of the patent application process connected with Defendant's invention system.

45.     Plaintiff has been damaged by Defendant's actions at an amount to be proven at trial. Because of the misrepresentations, Plaintiff was not compensated for these inventions.

46.     Defendant's conduct was malicious, fraudulent, oppressive and/or recklessly committed, with wanton disregard of Plaintiffs' rights.

## COUNT III – BREACH OF CONTRACT

47.     Plaintiff reasserts and realleges the allegations of paragraphs 1-46 above as if fully set forth herein.

48.     The agreements, representations and Statements of Work made by the parties formed a valid contract between the Plaintiff  and Defendant wherein said Agreements, representations and Statement's of Work entitled Plaintiff  to co-ownership of all intellectual property created under said  Agreements, representations and Statements of Work.

49.     Plaintiff performed all of their obligations under the contract.

50.     Defendant breached the contract.

51.     Plaintiff has been damaged by Defendant's breach.

52.     Defendant's conduct was malicious, fraudulent, oppressive and/or
recklessly committed, with wanton disregard of Plaintiff's rights.


## COUNT IV – UNENFORCEABLE AGREEMENT

53.     Plaintiff reasserts and realleges the allegations of paragraphs 1-52 above as if
fully set forth herein.

54.     Consideration was not paid to Plaintiff in exchange for his assignment of U.S.
Patent Application Serial Nos. 11/769,346, 12/406,595, 12/361,797, 12/406,281, 12/361,757 and
12/399,513 therefore making said assignments invalid and unenforceable.

55.     Defendant's conduct was malicious, fraudulent, oppressive and/or
recklessly committed, with wanton disregard of Plaintiff's rights.


WHEREFORE, Plaintiff prays this Court find that:

1.     Defendant's    conduct    was    malicious,    fraudulent,    oppressive    and/or
recklessly committed, with wanton disregard of Plaintiff 's rights;

2.     Damages    sufficient    to    alleviate    any    unjust    enrichment    of
Defendant;

3.     Actual  damages  and  punitive  damages  in  an  amount  to  be  proven  at
trial    for    the    malicious,    fraudulent,    oppressive    and/or    recklessly
committed fraud in the inducement;

4.   Actual damages and punitive damages in an amount to be proven at trial for the malicious, fraudulent, oppressive and/or recklessly committed breach of the contract;

5.   Reasonable attorney fees and costs; and

6.   Such other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on issues so triable.

Respectfully submitted,

/s/Douglas W. Sprinkle
Douglas W. Sprinkle (P25326)
Thomas E. Anderson (P32564)
GIFFORD, KRASS, SPRINKLE,
  ANDERSON & CITKOWSKI, P.C.
2701 Troy Center Drive, Suite 330
P.O. Box 7021
Troy, MI  48007-7021
litigation@patlaw.com
(248) 647-6000
(248) 647-5210 – Facsimile

Dated: March 18, 2011                    *Attorneys for Plaintiff*

12

**CERTIFICATE OF SERVICE**

I CERTIFY that on March 18, 2011, I filed the foregoing document with the Clerk of the Court, via the ECF system, which will provide electronic notification of the filing to the following counsel of record.

Thomas S. Bishoff
James P. Feeney
Dykema Gossett PLLC
39577 Woodward Ave. Ste. 300
Bloomfield Hills, MI 48304

and

Steven McMahon Zeller
Dykema Gossett PLLC
10 S. Wacker Drive, Suite 2300
Chicago, IL 60606

/s/Shannon Jennings
Shannon Jennings

# EXHIBIT A

US 20090002145A1

(19) **United States**

(12) **Patent Application Publication**   (10) Pub. No.: **US 2009/0002145 A1**
Berry et al.                                     (43) Pub. Date:       **Jan. 1, 2009**

(54) METHOD AND SYSTEM FOR EMERGENCY
     NOTIFICATION

(75) Inventors:   Joseph J. Berry, Northville, MI
                  (US); Mark J. Scalf, Warren, MI
                  (US); Douglas R. VanDagens,
                  Beverly Hills, MI (US); Francis
                  Luk, Ann Arbor, MI (US); Timothy
                  Robert Nixon, Northville, MI (US)

     Correspondence Address:
     BROOKS KUSHMAN P.C./FGTL
     1000 TOWN CENTER, 22ND FLOOR
     SOUTHFIELD, MI 48075-1238 (US)

(73) Assignee:    Ford Motor Company, Dearborn,
                  MI (US)

(21) Appl. No.:   11/769,346

(22) Filed:       Jun. 27, 2007

**Publication Classification**

(51) Int. Cl.
     *B60Q 1/00*          (2006.01)
(52) U.S. Cl. ...................................................... 340/436

(57)              **ABSTRACT**

Method and apparatus for notifying an emergency responder
of a vehicle emergency. Communication is established with a
cellular telephone located within the vehicle. The communi-
cation link is monitored and the vehicle occupant is notified of
link loss. The apparatus monitors vehicle safety systems for
detection of an emergency condition. Upon detection, the
occupant is notified that an emergency call will be made. If no
cancellation is received, vehicle location information is
obtained from a global position system, synthesized into
voice signals, and communicated to an emergency responder
using the cellular telephone. A plurality of occupant and
vehicle emergency information may also be provided. Emer-
gency responders may be provided with a touch tone menu to
select among the available information. Vehicle and occupant
information may be communicated to the apparatus from
external sources, such as a web server database via cellular
telephone connection, or removable memory.





*Fig. 1*



Fig. 2



*Fig. 3*

1

## METHOD AND SYSTEM FOR EMERGENCY NOTIFICATION

### BACKGROUND OF THE INVENTION

[0001]   1. Field of the Invention

[0002]   Embodiments of the present invention generally relate to a method and system for notifying emergency responders in the event of an automobile accident or other emergency.

[0003]   2. Background Art

[0004]   ONSTAR offers a SAFE & SOUND program in which a human "Advisor" fields emergency calls from ONSTAR-equipped vehicles. Calls are manually initiated at the vehicle either by depressing an emergency button located within the passenger compartment (e.g. below the rear-view mirror), or automatically initiated upon deployment of an air bag in the event of a collision. Collisions may be detected using one or more accelerometers or other impact detecting devices mounted within the vehicle, as is well known in the art.

[0005]   An emergency call from an ONSTAR-equipped vehicle to the Advisor switchboard indicates the geographic location of the vehicle, and places the Advisor in voice communication with the passenger compartment. The Advisor attempts to communicate with the occupant(s) of the vehicle to determine the severity and circumstances of the incident giving rise to the emergency call. If the Advisor determines that emergency attention is necessary, either because of the occupant response(s), or because there was no response indicating that the occupant(s) may be ejected and/or severely injured, the Advisor dispatches emergency responders closest to the reported location of the vehicle.

[0006]   U.S. Pat. No. 7,119,669 titled "Method And Apparatus For Detecting Vehicular Collisions" describes a cellular telephone that is equipped with technology for detecting a vehicular collision. This system is portable and operates independently, without the need of embedded vehicular subsystems, such as an accelerometer to detect collisions or a global positioning system to detect vehicle velocity and location. These subsystems are embedded into the cellular telephone described in the '669 patent. The '699 patent describes communicating electronic data, such as the magnitude, time and location of the collision to authorities in the even a collision is detected. The '699 patent also describes playing prerecorded messages about the device's owner, including medical information. The '699 patent describes various software "filters" for screening out "false positives" or "false collision detections" to avoid unnecessarily contacting emergency responders in non-emergency situations, such as when the cellular telephone is accidently dropped.

[0007]   U.S. Pat. No. 5,918,180 titled "Telephone Operable Global Tracking System For Vehicles" describes a system for tracking vehicles using a cellular telephone and global positioning system that is located in the vehicle. The system also includes a speech synthesizer circuit that converts the digitally-encoded coordinates into speech for enunciating the vehicle location through the cellular telephone. By calling the cellular telephone from a remote location, the owner of the vehicle can determine its location. The '180 patent also describes using the system to call the police.

[0008]   U.S. Pat. No. 5,555,286 titled "Cellular Phone Based Automatic Emergency Vessel/Vehicle Location System" describes a navigation unit that receives GPS data, and upon receipt of an activation event such as an airbag deploy-

ment, causes DTMF tones to be generated in a cellular telephone for dialing an emergency responder. The geographic location information and the identity of the vehicle are synthesized into voice and are then communicated to the emergency responder using the cellular telephone connection.

### SUMMARY OF THE INVENTION

[0009]   An objective of one or more embodiments of the present invention is to provide an improved emergency notification system that can promptly communicate emergency information to emergency responders in the event of an automobile accident or other emergency.

[0010]   Embodiments of the present invention enable users to customize the information that is presented to responders in the event of an emergency. For example, a user may access a database or other data storage device associated with the invention to define or otherwise customize information to be presented to the emergency responders in the event of an emergency call, such as name, address, blood type, medical allergies, doctor contact information, relatives, etc.

[0011]   Embodiments of the present invention enable emergency responders receiving an emergency call to select among a variety of available information that may be useful in responding to an emergency. Responders may be provided with a voice-synthesized menu to repeat and/or select among the available information using DTMF tones. In this fashion, the most urgent information, such as vehicle location, number of persons, etc. may be reported/received first, but other important information can be subsequently obtained at the responders' discretion. Another embodiment of the invention provides the responders with online access to driver/passenger emergency information.

[0012]   Another objective of one or more embodiments of the present invention is to prevent unnecessary notification of emergency responders in non-emergency situations. Upon detection of an emergency situation within the vehicle, such as an airbag deployment, one or more audible messages are played asking the occupant(s) to press a cancel button if the emergency call is to be cancelled. If the button is not pressed within a predetermined amount of time, the emergency call may be initiated.

[0013]   Another objective of one or more embodiments of the present invention is to maintain continuous connectivity between the vehicle emergency response module and at least one cellular telephone within the vehicle. Appropriate notifications and status indicators may be provided to inform vehicle occupants that connectivity is established, or broken.

[0014]   Embodiments of the present invention include a process and apparatus for notifying an emergency responder of a vehicle emergency. A first communication link, such as a BLUETOOTH link, is established with a first cellular telephone located within the vehicle. A connection status for the first communication link is monitored, and an indication to a vehicle occupant is generated if the first communication link is lost. The process monitors for receipt of an emergency signal indicating an emergency condition associated with the vehicle. If an emergency signal is received, a location for the vehicle is retrieved from a global positioning system. An indication is made to the occupant of the vehicle that a cellular telephone call to an emergency responder is going to be made to report the emergency and vehicle location. The occupant's response, if any, is monitored. If cancellation is not received, the cellular telephone is activated to dial a telephone number of an emergency responder. Data representing the emergency

US 2009/0002145 A1

Jan. 1, 2009

2

and location of the vehicle are processed into speech signals, and are communicated to the emergency responder over the first communication link.

[0015]  Another embodiment of the present invention includes storing a plurality of occupant or vehicle information in a data storage device, and presenting the emergency responder with voice menu options for selecting one or more items of the plurality of occupant or vehicle information.

[0016]  Another embodiment of the present invention enables the communication of one or more items of occupant or vehicle information to a Web server via the Internet, and then to the associated data storage device using a cellular telephone within the vehicle. Items of occupant or vehicle information may also be downloaded to the associated data storage device, or stored in a removable memory device interfaced to the data processor.

[0017]  According to another embodiment of the present invention, the emergency responder is provided with a touch tone menu to select among the plurality of occupant and vehicle information.

[0018]  Another embodiment of the present invention establishes a second communication link with a second cellular telephone within the vehicle if the first communication link with the first cellular telephone is lost.

[0019]  Yet another embodiment of the present invention activates the cellular telephone to dial a telephone number of a predefined contact other than an emergency responder, and communicate the speech signals to the predefined contact.

[0020]  These objectives and embodiments of the present invention are not exclusive. Other objectives and embodiments of the present invention are detailed in the following detailed description of the preferred embodiments, the accompanying figures and claims.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0021]  FIG. 1 is a system diagram illustrating aspects of physical embodiments of the present invention; and

[0022]  FIG. 2 is a block diagram of a BLUETOOTH controller which may be implemented to support aspects of embodiments of the present invention;

[0023]  FIG. 3 is a flow diagram illustrating a process for implementing embodiments of the present invention.

[0024]  These figures are not exclusive representations of the systems and processes that may be implemented to carry out the inventions recited in the appended claims. Those of skill in the art will recognize that the illustrated system and process embodiments may be modified or otherwise adapted to meet a claimed implementation of the present invention, or equivalents thereof.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT(S)

[0025]  FIG. 1 illustrates a physical system architecture which may be implemented to practice one or more aspects of the present invention. Block 10 generally comprises vehicle sub-systems, some of which may be interconnected by a vehicle network 12 such as a Controller Area Network or other suitable communication network.

[0026]  Data processor 16 may receive and send information across vehicle network 12 through an appropriate network interface or bus adapter 24. Data processor 16 may be a traditional RISC or CISC processor in bus communication with general purpose volatile memory 26, and general pur-

pose non-volatile or persistent storage 22, such as magnetic or flash memory, as is well known in the art. Removable memory 40 may also be provided, such as a compact flash card or a flash memory module having a Universal Serial Bus (USB) interface (not shown).

[0027]  A global positioning signal receiver/processor 14 may be implemented to receive radio signals (e.g. the L1 frequency of 1575.42 MHz in the UHF band) from multiple satellites of the Navigation Signal Timing and Ranging (NAVSTAR) Global Positioning System. These signals may include a pseudorandom code identifying the transmitting satellite, ephemeris data and almanac data. The global positioning signal receiver/processor 14 may process this data to determine the two-dimensional location (e.g. latitude and longitude), the three-dimensional location (e.g. latitude, longitude and altitude), the velocity and/or the direction of the vehicle. Location, velocity and/or direction information calculated at the global positioning signal receiver/processor 14 may be communicated across vehicle network 12, and/or directly to data processor 16 via link 18.

[0028]  Alternatively, a global positioning signal receiver/processor 53 may be a subsystem of cellular telephone 50. Information representing the global position of the cellular telephone, and thus the vehicle in which the cellular telephone is located, may be retrieved by data processor 16 via transceiver 38 and communication link 46.

[0029]  The vehicle sub-systems may include a map database 20. Database 20, like general storage 22, may take several forms including but no limited to magnetic storage (e.g. a hard drive), optical storage (e.g. CD-ROM, DVD), flash memory, etc. Data processor 16 may determine a present street location and heading of the vehicle based on latitude, longitude and direction data received from GPS receiver/processor, and map data retrieved from database 20, as is well known in the art.

[0030]  A plurality of emergency condition sensors 28 may be interfaced to vehicle network 28. Such sensors may include but are not limited to air bag deployment sensors, vehicle impact sensors, dash impact sensors, seat/occupant impact sensors, rollover sensors, flame/heat sensors, gasoline sensors and an occupant-activated panic button. These sensors may operate within individual processing modules (not shown), each having a separate interface (not shown) to the vehicle network 12 for sending signals indicating a plurality of different emergency conditions.

[0031]  Another subsystem in communication with data processor 16 includes a voice synthesizer or decoder 28 for converting digital information received from the data processor 16 into audible speech signals, i.e. analog sound signals. The analog sound signals may be communicated through speaker 32, or processed at transceiver 38, for communication to cellular telephone 50 transceiver (not shown) across piconet 46 as discussed in greater detail below. A dual tone multifrequency (DTMF) interface 30 may be provided for receiving analog DTMF frequencies and processing them as command signals to data processor 16, as is well known in the art of automated telephone menu systems.

[0032]  Transceiver 38 may establish a piconet 46 with cellular telephone 50 or other available device. Cellular telephone 50 is an example of a transient cellular communication device that is not permanently integrated into the vehicle. Another example of a transient cellular communication device may be a laptop computer having cellular communication and piconet communication capabilities.

3

[0033]   In one example, transceiver 38 may comprise a BLUETOOTH controller. Those of skill in the art will recognize that other transceivers may be used having different communication characteristics and performance.

[0034]   As illustrated in FIG. 2, a BLUETOOTH controller may include a link manager layer 82, a baseband layer 84 and a radio layer 86. The radio layer 86 may include a radio frequency module operating at 2.4 GHz using binary frequency modulation.

[0035]   Baseband layer 84 may include a baseband resource manager 92 for managing the exchange of data between connected devices over logical links and logical transports, as well as the use of the radio medium to carry out inquiries, make connections, or be discoverable.

[0036]   Baseband layer 84 may also include a link controller 90 which handles encoding and decoding of BLUETOOTH packets from the data payload and parameters related to the physical channel, logical transport and logical link. The link controller 90 carries out the link control protocol signaling which is used to communicate flow control and acknowledgment and retransmission request signals.

[0037]   Device manager 94 controls the general behavior of the BLUETOOTH enabled device. It is responsible for operation of the BLUTOOTH system that is not directly related to data transport, such as inquiring for the presence of other nearby devices, connecting to other devices or making the local device discoverable or connectable by other devices.

[0038]   The link manager layer 82 may include a link manager 96 for managing the creation, modification, and release of logical links and/or logical transports, as well as the update of parameters related to physical links between devices. The link manager may achieve this by communicating with the link manager in remote BLUETOOTH devices using the link management protocol (LMP). The LMP allows the creation of new logical links and logical transports between devices when required, as well as the general control of link and transport attributes such as the enabling of encryption on the logical transport, the adapting of transmit power on the physical link or the adjustment of QoS settings for a logical link.

[0039]   Other vehicle subsystems 10 include a link status indicator 36 for notifying vehicle occupants of the status of the communication link between transceiver 38 and cellular telephone 50. Statuses include but are not limited to available devices, paired, unpaired, connected, not connected, etc. In one embodiment, the status of the communication link is indicated on a liquid crystal display (LCD). In another embodiment, one or more light emitting diodes (LEDs) or other visual indicators are provided. In yet another embodiment, audible status notifications are provided through the vehicle sound system and/or speaker 32. Link status may be monitored by data processor 16 in conjunction with transceiver 38.

[0040]   A select/cancel switch 34 may also interface with data processor 16 for push-button control over microprocessor/system functions as described in greater detail below. Select/cancel switch 34 may be a soft switch operating in conjunction with a LCD display, or a software switch operated by voice command received at microphone 32 and processed by voice synthesizer 28 and/or microprocessor 16.

[0041]   A wide variety of different interconnections among subsystems 10 and external communication networks may be practiced within the scope of the present invention, beyond those illustrated in FIG. 1. For example, a hard wire connection may be established between cellular telephone 50 and data processor 16, voice synthesizer 28, and/or DTMF interface 30. In another example, data processor 16 may be connected directly or indirectly to emergency sensor modules 28, and may monitor the ports to which the emergency sensor modules are attached instead of vehicle network 12.

[0042]   In one embodiment of the present invention, cellular telephone 50 establishes wireless communication 48 with terrestrial tower 52. Terrestrial tower 52 in turn established communication through telephone switching network 54 with emergency responder(s) 56. Emergency responders may include police, ambulance a 911 public safety access point (PSAP), etc. as described in greater detail below. Terrestrial tower 52 may also establish communication through telephone switching network 54 with other contacts 58, as described in greater detail below.

[0043]   In another embodiment of the present invention, terrestrial tower 52 may establish communication through telephone switching network 54 with a data interface (not shown) at web server 60. As described in greater detail below, data may be uploaded and downloaded communicated from associated database 68 to/from storage 22 associated with microprocessor 16, as illustrated by dashed line 70.

[0044]   Web server 60 having associated storage 68 may host a plurality of web pages for Internet access 62 by a plurality of browsers, including but not limited to emergency responder(s) 66, cellular telephone owner(s) 64, healthcare providers, etc. As described in greater detail below, some browsers, such as cellular telephone owners 64 may upload data over Internet 62 to storage 68, and other browsers, such as emergency responders 66 may download data

[0045]   FIG. 3 illustrates an example algorithm 100 for implementing an embodiment of the present invention. Those of skill in the art will recognize that the scope of the present invention is not limited to the specific algorithm illustrated in FIG. 3. The illustrated process may modified to fit a particular implementation of the present invention. The processes illustrated in FIG. 3 may be implemented by one or more processors, such as data processor 16 illustrated in FIG. 1. No particular type of processor or configuration is required.

[0046]   At step 102, a local communication link may be established with an available cellular telephone in or nearby the vehicle passenger compartment. The link may be a BLUETOOTH piconet, or other suitable short-range network, wired or wireless. At steps 104 and 106, the status of the communication link may monitored on a continuous or basis, or at regular intervals. The status of the link may include the connectivity of the paired cellular telephone, the signal strength, the identity of other available devices, etc. s described with respect to FIG. 1, link status may be reported by LCD display, LED, or audibly. Preferably, a warning or other notification is provided to passengers within the vehicle compartment when a link is disrupted, or when no link is available.

[0047]   At step 108, an emergency notification signal is received from vehicle emergency sensors 110. Vehicle emergency sensors 110 may include but are not limited to air bag deployment sensors, vehicle impact sensors, dash impact sensors, seat impact sensors, rollover sensors, flame sensors, gasoline sensors, etc. Emergency signals from these sensors may be received at data processor 16 directly by wire, wirelessly, or over vehicle network 12.

[0048]   Upon receipt of an emergency notification signal, the system may notify occupants of the vehicle, at step 112, that an emergency call to one or more emergency responders

US 2009/0002145 A1

Jan. 1, 2009

4

56 or other contacts 58 is going to be made at cellular telephone 50. Occupant notification is preferably done audibly using voice synthesizer 28 and speaker 32 which may or may not be a component of the vehicle sound system. The following is an example notification:

[0049] "Warning. A safety sensor in this vehicle has detected a vehicle collision. The vehicle safety system will automatically contact emergency responders in 10 seconds. Press your cancel button or say CANCEL if you want to terminate this call."

[0050] Of course, an unlimited number of different notifications may be provided. They may be pre-recorded, pre-defined, or dynamically created based on the particular emergency detected and/or the particular occupant(s) within the vehicle. Preferably, the notification is repeated. At step 114, the vehicle occupants are provided with an opportunity to cancel the emergency call using the select/cancel switch 22 or a voice command received at microphone 32 and voice synthesizer 28. If a cancellation signal is received, the process stops, and returns to monitoring link status at block 104.

[0051] If the emergency call is not terminated at 114, emergency information is collected at step 118. Emergency information may include vehicle information 116 and occupant information 120. Vehicle information 116 may include latitude, longitude, direction, last velocity, etc from GPS receiver/processor 14, street location if the vehicle is equipped with map data 20, vehicle type/color, vehicle emergency condition (e.g., impact, fire, rollover, fire, gasoline leak, etc.), number of occupants, seat belt status, etc. Occupant information 120 may include name, age, address, blood type, medical allergies, medical condition, insurance information, physician information, emergency contact(s), etc. Emergency information may be stored in a plurality of storage locations including memory 26, storage 22, removable memory 40, or storage 51 associated with cellular telephone 50.

[0052] Occupant identification may be determined by the owner of the cellular telephone 50 paired with transceiver 38, voice input at microphone 32, user input at a vehicle console display (not shown), or other means including key identifier, memory key identifier, etc.

[0053] After emergency information is collected at step 118, another occupant notification may be made warning the occupant(s) that an emergency call is going to be made, and providing the occupant(s) with an opportunity to cancel the call, as described above with respect to steps 112 and 114. This step is represented by dashed lines 128.

[0054] If the emergency call is not canceled, transceiver 38 such as a BLUETOOTH controller may initiate a call on cellular telephone 50 to one or more emergency responders 56 or other contacts 58 at step 121. If a call cannot be initiated, the system attempts to establish connection with another cellular telephone in or nearby the vehicle as represented at block 122, and communicate the emergency information as represented at block 121.

[0055] At step 124, elements of vehicle information 116 and/or occupant information 120 may be synthesized into speech signals at voice synthesizer 28 and read to the terminating party 56 or 58 as indicated at block 126. In one embodiment of the present invention, the data processor 16 and the voice synthesizer 28 provide the terminating party 56 or 58 with touch tone DTMF menu options for repeating and retrieving the various elements of vehicle information 116

and/or occupant information 120. This process is illustrated with dashed lines 130 and 132.

[0056] If the occupant(s) have identified additional contacts 58 for reporting emergency information, those entities are contacted, and emergency information is reported, as represented by step 134.

[0057] As illustrated in FIG. 1, emergency responders 66 and cellular telephone/vehicle owners 64 are provided with Internet access to web server 60 having associated storage 68. Cellular telephone/vehicle owners 64 may access one or more Web pages hosted at server 60 for defining the emergency information to be provided to emergency responders 56 and 66, and/or the manner in which that information is provided. For example, cellular telephone/vehicle owners 64 may specify their name, age (date of birth), address, blood type, medical allergies, medical conditions, physician, emergency contact persons, etc. Cellular telephone/vehicle owners 64 may specify which of this information is disclosed to emergency responders 56 and/or 66 in the event of an emergency. The emergency information may be uploaded to cellular telephone storage 51 via cellular link 48, and/or to in-vehicle storage 22 for reporting via voice synthesizer 28 to emergency responders 56 and other contacts 58 in the event of an emergency.

[0058] The emergency information may also be stored in a database 68 associated with web server 68 for Internet access by emergency responders 66 in the event of an emergency. In one embodiment, speech transmission to emergency responders 56 includes instructions for accessing occupant emergency information at server 60 over the Internet 62. In this manner, emergency responders 56 and/or 66 can readily access all of an occupant's emergency information.

[0059] While the best mode for carrying out the invention has been described in detail, those familiar with the art to which this invention relates will recognize various alternative designs and embodiments for practicing the invention as defined by the following claims.

What is claimed:

1. A method for notifying an emergency responder of a vehicle emergency, the method comprising:

within a vehicle, establishing a first communication link with a first cellular telephone;

monitoring a connection status for the first communication link and generating an indication to a vehicle occupant if the first communication link is lost;

monitoring for receipt of an emergency signal indicating an emergency condition associated with the vehicle; and

if an emergency signal is received:

(a) retrieving a location for the vehicle from a global positioning system;

(b) indicating to the occupant of the vehicle that a cellular telephone call to an emergency responder is going to be made to report the emergency and vehicle location;

(c) monitoring an input device to determine whether the occupant has cancelled the emergency call;

(d) if the occupant has not canceled the emergency call, activating the cellular telephone to dial a telephone number of an emergency responder;

(e) processing data representing the emergency and location of the vehicle into speech signals; and

(f) communicating the speech signals to the emergency responder over the first communication link.

5

2. The method of claim 1 additionally comprising:

storing a plurality of occupant or vehicle information in a data storage device;

presenting the emergency responder with voice menu options for selecting one or more items of the plurality of occupant or vehicle information;

processing the selected items into speech signals; and

communicating the speech signals to the emergency responder over the first communication link.

3. The method of claim 2 wherein one or more items of occupant or vehicle information are:

(a) communicated to a Web browser;

(b) communicated from the Web browser to a Web server over the Internet;

(c) communicated from the Web server to the cellular telephone;

(d) communicated from the cellular telephone to a data processor within the vehicle; and

(e) stored within the data storage device.

4. The method of claim 2 wherein one or more items of occupant or vehicle information are downloaded to the data storage device.

5. The method of claim 2 wherein the data storage device includes removable memory.

6. The method of claim 2 wherein the selection is performed using telephone touch tones.

7. The method of claim 1 additionally comprising if the first communication link is lost, establishing a second communication link with a second cellular telephone within the vehicle.

8. The method of claim 1 additionally comprising:

activating the cellular telephone to dial a telephone number of a predefined contact other than an emergency responder; and

communicating the speech signals to the predefined emergency contact.

9. The method of claim 1 wherein the communication link is a BLUETOOTH link.

10. An apparatus for notifying an emergency responder of a vehicle emergency, the apparatus comprising a data processor in communication with:

(a) a global positioning system for providing electrical signals to the data processor data representing a location for a vehicle;

(b) an emergency sensor for detecting a vehicle emergency, and providing electrical signals to the data processor indicating an emergency state;

(c) a voice synthesizer for converting electrical signals representing the vehicle location and an emergency call notification into speech signals;

(d) a speaker for audibly relaying the emergency call notification to the vehicle occupant;

(e) an input device monitoring for a cancellation by the occupant of the emergency call in response to the emergency call notification; and

(f) a communication module for establishing a first communication link with a first cellular telephone within the vehicle and, if emergency call is not cancelled by the occupant, initiating a call at the cellular telephone to an emergency responder and communicating speech signals representing the vehicle location to the cellular telephone for telephone communication to an emergency responder.

11. The apparatus of claim 11 additionally comprising a data storage device in communication with the data processor for storing a plurality of occupant or vehicle information, wherein one or more items of the plurality of occupant or vehicle information are processed into speech signals at the voice synthesizer for communication to the emergency responder.

12. The apparatus of claim 12 wherein the communication module is configured to provide a voice menu categorizing the plurality of occupant or vehicle information, and receive one or more touch-tone signals to select which items are provided.

13. The apparatus of claim 11 wherein the communication module is configured to monitor a status of the first communication link with the first cellular telephone, and generate an indication to the vehicle occupant if the communication link is lost.

14. The apparatus of claim 14 wherein the communication module is configured to establish a second communication link with a second cellular telephone if the first communication link with the first cellular telephone is lost.

15. The apparatus of claim 11 wherein the communication module is configured to dial a telephone number of a predefined contact other than an emergency responder and communicate voice signals to the predefined emergency contact.

16. Apparatus of claim 11 wherein the communication module is a BLUETOOTH controller.

* * * * *

# EXHIBIT B
# (SEALED PER
# ORDER)

# EXHIBIT C (SEALED PER ORDER)

# EXHIBIT D (SEALED PER ORDER)

# EXHIBIT E

Please direct all correspondence to: 28395

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## ASSIGNMENT

WHEREAS, THE UNDERSIGNED, has/have invented certain new and useful improvements in:

Attorney Docket No. **81161574** entitled: **METHOD AND SYSTEM FOR EMERGENCY NOTIFICATION**

for which I/we intend to make application for Letters Patent of the United States listing the following as inventors: **Joseph J. Berry, Mark J. Scalf, Douglas R. VanDagens, Francis Luk, Timothy Robert Nixon**; and

WHEREAS, FORD MOTOR COMPANY, a corporation organized and existing by virtue of the laws of the State of Delaware, having its principal place of business at Dearborn, County of Wayne, and State of Michigan, is desirous of acquiring an interest therein;

NOW, THEREFORE, pursuant to my employment agreement heretofore made with FORD MOTOR COMPANY, or by contractual obligation, I do sell, assign and transfer unto FORD MOTOR COMPANY the full and exclusive right for the United States of America and for all foreign countries to the said invention, as described in the specification executed by me on the date listed below, preparatory to obtaining Letters Patent of the United States therefor (and I hereby authorize my attorneys to insert the serial number and filing date herein:

Serial No. __11/769,346__, Filing Date __June 27, 2007__ ), and I hereby request the Commissioner of Patents and Trademarks to issue said Letters Patent to FORD MOTOR COMPANY as the assignee. Executed by:

SIGNATURE:

Name: Joseph J. Berry                Date: 6/12/07
Home Address: 56687 Crystal Downs West
City, State, Zip: Northville, MI 48167,
Country: United States of America

Name: Mark J. Scalf                  Date: 6/12/2007
Home Address: 14734 Lutz Ave.,
City, State, Zip: Warren, MI 48088,
Country: United States of America

Name: Douglas R. VanDagens          Date: 6/12/2007
Home Address: 32233 Crossbow
City, State, Zip: Beverly Hills, MI 48025,
Country: United States of America

Name: Francis Luk                    Date: 06/12/07
Home Address: 1678 Glenwood Dr,
City, State, Zip: Ann Arbor, MI 48104,
Country: United States of America

Name: Timothy Robert Nixon          Date: 6/12/2007
Home Address: 21112 Centerfarm Lane,
City, State, Zip: Northville, MI 48167,
Country: United States of America

Jennifer Stec

Please direct all correspondence to: 28395

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

## ASSIGNMENT

WHEREAS, THE UNDERSIGNED,

has/have invented certain new and useful improvements in:

Attorney Docket No. 81168096 entitled: **DYNAMIC TRAFFIC ASSESSMENT AND REPORTING**

for which I/we intend to make application for Letters Patent of the United States listing the following as inventors: **Mark Scalf, Joseph J. Berry.**

Pursuant to my employment agreement heretofore made or by contractual obligation, I do sell, assign and transfer unto FORD GLOBAL TECHNOLOGIES, LLC, a Ford Motor Company Limited Liability Company organized and existing by virtue of the laws of the State of Delaware, having its principal place of business at Dearborn, County of Wayne, and State of Michigan, the full and exclusive right for the United States of America and for all foreign countries to the said invention, as described in the specification executed by me on the date listed below, preparatory to obtaining Letters Patent of the United States therefor (and I hereby authorize my attorneys to insert the serial number and filing date herein:
Serial No. 12/406,595 , Filing Date March 18, 2009 and I hereby request the Commissioner of Patents and Trademarks to issue said Letters Patent to FORD GLOBAL TECHNOLOGIES, LLC as the assignee.

Executed by:                                             SIGNATURE:

Name:              Mark Scalf                                    Date: 2/9/2009
Home Address:      14734 Lutz Ave.,
City, State, Zip:  Warren, MI 48088,
Country:           United States of America

Name:              Joseph J. Berry                               Date: 2-9-09
Home Address:      56687 Crystal Downs West
City, State, Zip:  Northville, MI 48167,
Country:           United States of America

*Jennifer Stec*

Please direct all correspondence to:  28395

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

## ASSIGNMENT

WHEREAS, THE UNDERSIGNED,

has/have invented certain new and useful improvements in:

Attorney Docket No. **81168099** entitled: **METHOD AND APPARATUS FOR PROVIDING A NAVIGATION SUMMARY**
for which I/we intend to make application for Letters Patent of the United States listing the following as inventors: **Joseph J. Berry, Mark Scalf.**

      Pursuant to my employment agreement heretofore made or by contractual obligation, I do sell, assign and transfer unto FORD GLOBAL TECHNOLOGIES, LLC, a Ford Motor Company Limited Liability Company organized and existing by virtue of the laws of the State of Delaware, having its principal place of business at Dearborn, County of Wayne, and State of Michigan, the full and exclusive right for the United States of America and for all foreign countries to the said invention, as described in the specification executed by me on the date listed below, preparatory to obtaining Letters Patent of the United States therefor (and I hereby authorize my attorneys to insert the serial number and filing date herein:
Serial No. __12/361,797__, Filing Date __January 29, 2009__ ), and I hereby request the Commissioner of Patents and Trademarks to issue said Letters Patent to FORD GLOBAL TECHNOLOGIES, LLC as the assignee.

Executed by:                                   SIGNATURE:

Name:            Joseph J. Berry                          Date: 11/21/08
Home Address:    56687 Crystal Downs West
City, State, Zip: Northville, MI 48167,
Country:         United States of America

Name:            Mark Scalf                               Date: 11/21/2008
Home Address:    14734 Lutz Ave.,
City, State, Zip: Warren, MI 48088,
Country:         United States of America

*Jennifer Stec*

Please direct all correspondence to: **28395**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

### ASSIGNMENT

WHEREAS, THE UNDERSIGNED,

has/have invented certain new and useful improvements in:

Attorney Docket No. **81182820** entitled: **SYSTEM AND METHOD FOR AUTOMATIC STORAGE AND RETRIEVAL OF EMERGENCY INFORMATION**
for which I/we intend to make application for Letters Patent of the United States listing the following as inventors: **David M. DiMeo, Joseph J. Berry, Sukhwinder Wadhwa**.

Pursuant to my employment agreement heretofore made or by contractual obligation, I do sell, assign and transfer unto FORD GLOBAL TECHNOLOGIES, LLC, a Ford Motor Company Limited Liability Company organized and existing by virtue of the laws of the State of Delaware, having its principal place of business at Dearborn, County of Wayne, and State of Michigan, the full and exclusive right for the United States of America and for all foreign countries to the said invention, as described in the specification executed by me on the date listed below, preparatory to obtaining Letters Patent of the United States therefor (and I hereby authorize my attorneys to insert the serial number and filing date herein:
Serial No. 12/406,281_____, Filing Date March 18, 2009_____), and I hereby request the Commissioner of Patents and Trademarks to issue said Letters Patent to FORD GLOBAL TECHNOLOGIES, LLC as the assignee.

Executed by:

SIGNATURE:

| | | |
|---|---|---|
| Name: | David M. DiMeo | Date: 03/06/2009 |
| Home Address: | 50288 Cressnut Ct, | |
| City, State, Zip: | Northville, MI  48168 | |
| Country: | United States of America | |

| | | |
|---|---|---|
| Name: | Joseph J. Berry | Date: 3/6/2009 |
| Home Address: | 56687 Crystal Downs West | |
| City, State, Zip: | Northville, MI 48167, | |
| Country: | United States of America | |

| | | |
|---|---|---|
| Name: | Sukhwinder Wadhwa | Date: 3/9/2009 |
| Home Address: | 1959 Rockport St | |
| City, State, Zip: | Windsor, Ontario N9G3C8 | |
| Country: | Canada | |

*Jennifer Stec*

Please direct all correspondence to:  28395

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

### ASSIGNMENT

WHEREAS, THE UNDERSIGNED,

has/have invented certain new and useful improvements in:

Attorney Docket No. **81184515** entitled: **A SYSTEM AND METHOD FOR INTERRUPTING AN INSTRUCTIONAL PROMPT TO SIGNAL UPCOMING INPUT OVER A WIRELESS COMMUNICATION LINK**

for which I/we intend to make application for Letters Patent of the United States listing the following as inventors: **Joseph J. Berry, Mark Scalf.**

Pursuant to my employment agreement heretofore made or by contractual obligation, I do sell, assign and transfer unto FORD GLOBAL TECHNOLOGIES, LLC, a Ford Motor Company Limited Liability Company organized and existing by virtue of the laws of the State of Delaware, having its principal place of business at Dearborn, County of Wayne, and State of Michigan, the full and exclusive right for the United States of America and for all foreign countries to the said invention, as described in the specification executed by me on the date listed below, preparatory to obtaining Letters Patent of the United States therefor (and I hereby authorize my attorneys to insert the serial number and filing date herein: Serial No. _12/361,757_, Filing Date _January 29, 2009_), and I hereby request the Commissioner of Patents and Trademarks to issue said Letters Patent to FORD GLOBAL TECHNOLOGIES, LLC as the assignee.

Executed by:

SIGNATURE:

| | |
|---|---|
| Name: | Joseph J. Berry |
| Home Address: | 46687 Crystal Downs West |
| City, State, Zip: | Northville, MI 48167, |
| Country: | United States of America |

Date: 1/21/09

| | |
|---|---|
| Name: | Mark Scalf |
| Home Address: | 14734 Lutz Ave., |
| City, State, Zip: | Warren, MI 48088, |
| Country: | United States of America |

Date: 1/21/2009

*Jennifer Stec*

**Please direct all correspondence to: 28395**



## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### ASSIGNMENT

WHEREAS, THE UNDERSIGNED, has/have invented certain new and useful improvements in: Attorney Docket No. **81183043** entitled: **METHOD AND SYSTEM FOR EMERGENCY CALL HANDLING** for which I/we intend to make application for Letters Patent of the United States listing the following as inventors: **Joseph J. Berry, Mark J. Scalf, Douglas R. VanDagens, Francis Luk, Timothy Robert Nixon;** and

WHEREAS, FORD MOTOR COMPANY, a corporation organized and existing by virtue of the laws of the State of Delaware, having its principal place of business at Dearborn, County of Wayne, and State of Michigan, is desirous of acquiring an interest therein;

NOW, THEREFORE, pursuant to my employment agreement heretofore made with FORD MOTOR COMPANY, or by contractual obligation, I do sell, assign and transfer unto FORD MOTOR COMPANY the full and exclusive right for the United States of America and for all foreign countries to the said invention, as described in the specification executed by me on the date listed below, preparatory to obtaining Letters Patent of the United States therefor (and I hereby authorize my attorneys to insert the serial number and filing date herein: Serial No. 12/399,513 _____, Filing Date March 6, 2009 _____), and I hereby request the Commissioner of Patents and Trademarks to issue said Letters Patent to FORD MOTOR COMPANY as the assignee. Executed by:

SIGNATURE:

| | | |
|---|---|---|
| Name: | Joseph J. Berry | Date: 2-09-09 |
| Home Address: | 56687 Crystal Downs West | |
| City, State, Zip: | Northville, MI 48167, | |
| Country: | United States of America | |

| | | |
|---|---|---|
| Name: | Mark J. Scalf | Date: 2/9/2009 |
| Home Address: | 14734 Lutz Ave., | |
| City, State, Zip: | Warren, MI 48088, | |
| Country: | United States of America | |

| | | |
|---|---|---|
| Name: | Douglas R. VanDagens | Date: 2.09.09 |
| Home Address: | 32233 Crossbow | |
| City, State, Zip: | Beverly Hills, MI 48025, | |
| Country: | United States of America | |

| | | |
|---|---|---|
| Name: | Francis Luk | Date: _____ |
| Home Address: | 1678 Glenwood Dr, | |
| City, State, Zip: | Ann Arbor, MI 48104, | |
| Country: | United States of America | |

| | | |
|---|---|---|
| Name: | Timothy Robert Nixon | Date: _____ |
| Home Address: | 21112 Centerfarm Lane, | |
| City, State, Zip: | Northville, MI 48167, | |
| Country: | United States of America | |

*Jennifer Stec*

**Please direct all correspondence to:  28395**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### ASSIGNMENT

WHEREAS, THE UNDERSIGNED, has/have invented certain new and useful improvements in: Attorney Docket No. **81183043** entitled: **METHOD AND SYSTEM FOR EMERGENCY CALL HANDLING** for which I/we intend to make application for Letters Patent of the United States listing the following as inventors: **Joseph J. Berry, Mark J. Scalf, Douglas R. VanDagens, Francis Luk, Timothy Robert Nixon;** and

WHEREAS, FORD MOTOR COMPANY, a corporation organized and existing by virtue of the laws of the State of Delaware, having its principal place of business at Dearborn, County of Wayne, and State of Michigan, is desirous of acquiring an interest therein;

NOW, THEREFORE, pursuant to my employment agreement heretofore made with FORD MOTOR COMPANY, or by contractual obligation, I do sell, assign and transfer unto FORD MOTOR COMPANY the full and exclusive right for the United States of America and for all foreign countries to the said invention, as described in the specification executed by me on the date listed below, preparatory to obtaining Letters Patent of the United States therefor (and I hereby authorize my attorneys to insert the serial number and filing date herein:
Serial No. 12/399,513 , Filing Date March 6, 2009 ), and I hereby request the Commissioner of Patents and Trademarks to issue said Letters Patent to FORD MOTOR COMPANY as the assignee.  Executed by:

SIGNATURE:

Name:               Joseph J. Berry _____ Date: _____
Home Address:  56687 Crystal Downs West
City, State, Zip:   Northville, MI 48167,
Country:            United States of America

Name:               Mark J. Scalf _____ Date: _____
Home Address:  14734 Lutz Ave.,
City, State, Zip:   Warren, MI 48088,
Country:            United States of America

Name:               Douglas R. VanDagens _____ Date: _____
Home Address:  32233 Crossbow
City, State, Zip:   Beverly Hills, MI 48025,
Country:            United States of America

Name:               Francis Luk _____ Date: _Feb 10, 2009_
Home Address:  1678 Glenwood Dr,
City, State, Zip:   Ann Arbor, MI 48104,
Country:            United States of America

Name:               Timothy Robert Nixon _____ Date: _____
Home Address:  21112 Centerfarm Lane,
City, State, Zip:   Northville, MI 48167,
Country:            United States of America

*Jennifer Stec*

**Please direct all correspondence to: 28395**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### ASSIGNMENT

WHEREAS, THE UNDERSIGNED, has/have invented certain new and useful improvements in: Attorney Docket No. **81183043** entitled: **METHOD AND SYSTEM FOR EMERGENCY CALL HANDLING** for which I/we intend to make application for Letters Patent of the United States listing the following as inventors: **Joseph J. Berry, Mark J. Scalf, Douglas R. VanDagens, Francis Luk, Timothy Robert Nixon;** and

WHEREAS, FORD MOTOR COMPANY, a corporation organized and existing by virtue of the laws of the State of Delaware, having its principal place of business at Dearborn, County of Wayne, and State of Michigan, is desirous of acquiring an interest therein;

NOW, THEREFORE, pursuant to my employment agreement heretofore made with FORD MOTOR COMPANY, or by contractual obligation, I do sell, assign and transfer unto FORD MOTOR COMPANY the full and exclusive right for the United States of America and for all foreign countries to the said invention, as described in the specification executed by me on the date listed below, preparatory to obtaining Letters Patent of the United States therefor (and I hereby authorize my attorneys to insert the serial number and filing date herein: Serial No. __12/399,513__, Filing Date __March 6, 2009__), and I hereby request the Commissioner of Patents and Trademarks to issue said Letters Patent to FORD MOTOR COMPANY as the assignee. Executed by:

### SIGNATURE:

Name: Joseph J. Berry _____ Date: _____
Home Address: 56687 Crystal Downs West
City, State, Zip: Northville, MI 48167,
Country: United States of America

Name: Mark J. Scalf _____ Date: _____
Home Address: 14734 Lutz Ave.,
City, State, Zip: Warren, MI 48088,
Country: United States of America

Name: Douglas R. VanDagens _____ Date: _____
Home Address: 32233 Crossbow
City, State, Zip: Beverly Hills, MI 48025,
Country: United States of America

Name: Francis Luk _____ Date: _____
Home Address: 1678 Glenwood Dr,
City, State, Zip: Ann Arbor, MI 48104,
Country: United States of America

Name: Timothy Robert Nixon _____ Date: 2/16/09
Home Address: 21112 Centerfarm Lane,
City, State, Zip: Northville, MI 48167,
Country: United States of America

*Jennifer Stec*